FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

SEP 1 8 2019

JAMES W. McCORMACK, CLERK
By:_____
                        DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

REGINALD DAVIS                                                PLAINTIFF

VS.                         CASE NO. 4:19CV643-JM

PULASKI COUNTY, ARKANSAS,
A Public Body Corporate and Politic,
ERIC S. HIGGINS, In His Official
Capacity as the Sheriff of Pulaski
County, Arkansas, DEBRA ANN DILLARD,     This case assigned to District Judge Moody
NICOLE NELSON, SGT. ANDREW MCEWEN,       and to Magistrate Judge _____
In Their Individual and Official Capacities as
Sheriff Deputies for Pulaski County,
Arkansas, TURN KEY HEALTH CLINICS LLC,
DEIRDRA VESTER, LPN                                           DEFENDANTS

COMPLAINT

I.
Introduction

The plaintiff Reginald Davis brings this action in order to recover damages against the defendants pursuant to the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, in that the defendants were deliberately indifferent to the serious medical needs of the plaintiff. This cause of action is also being brought seeking damages for medical negligence. This cause of action is also being brought pursuant to 42 U.S.C.S. § 1983.

II.
Jurisdiction

1.      Jurisdiction of this Court is being invoked pursuant to 28 U.S.C.S. § 1343. Relief is pursuant to 42 U.S.C.S. § 1983 and the Fifth, Eighth, and Fourteenth Amendments to the United

1

States Constitution. The Court is also asked to assume supplemental jurisdiction over the plaintiff's state law claims.

2. This is also an action seeking declaratory relief pursuant to 28 U.S.C.S. § 2201 to declare the rights and other relations between the parties and for damages.

### III.
### Parties

3. The plaintiff is a resident of Pulaski County, Arkansas, and is a citizen of the United States of America.

4. The defendant Pulaski County, Arkansas, is a public body corporate created by the General Assembly for the State of Arkansas pursuant to Ark. Code Ann. § 14-14-501. Pulaski County, Arkansas owns and operates a sheriff department to keep the peace and order of said county. Furthermore, said county owns and operates a county jail for the purpose of housing pre-trial and post-trial detainees.

5. The defendant Eric S. Higgins is the duly elected sheriff of Pulaski County, Arkansas, and is charged with the responsibility of training his deputies, and has the overall executive responsibility of the Pulaski County Regional Detention Facility.

6. The defendant Debra Ann Dillard at the time of the plaintiff's injury, was employed in the capacity as jailer/deputy for the Pulaski County Sheriff's Department. The defendant Debra Ann Dillard is being sued in her individual and official capacity.

7. The defendant Nicole Nelson at the time of the plaintiff's injury, was employed in the capacity as jailer/deputy for the Pulaski County Sheriff's Department. The defendant Nicole Nelson is being sued in her individual and official capacity.

8. The defendant Sgt. Andrew McEwen at the time of the plaintiff's injury, was employed in the capacity as jailer/deputy for the Pulaski County Sheriff's Department. The defendant Sgt. McEwen is being sued in his individual and official capacity.

9. The defendant Turn Key Health Clinics LLC., is a foreign limited liability company, doing business in the State of Arkansas as Turn Key Health Clinics, providing medical services to the inmates of the Pulaski County Regional Detention Facility, on a contractual basis.

10. The Agent for Service of Process for Turn Key Health Clinics LLC., is Incorp Services Inc., 4250 Venetian Lane, Fayetteville, Arkansas 72703.

11. According to the corporate statement of Turn Key Health Clinics, its corporate offices are located in Oklahoma City, Oklahoma, and its "leadership team is more knowledgeable and experienced with operating medical programs for jails in our region than any other company in the correctional health industry. Our team is experienced with managing the day-to-day medical operations in jails with inmate populations ranging from 45 to 2500 inmates."

12. Turn Key Health Clinics states that it provides "comprehensive health programs that include medical, mental health, and dental programs just like our competitors."

13. Turn Key Health Clinics further states that "[i]ndividuals associated with the corrections industry are aware of the potential difficulties associated with recruiting and retaining quality personnel. . . Turn Key Health Clinics is unmatched in our region with the ability to recruit and retain dependable staff for the correctional environment. . . With such a high emphasis on recruiting locally, Turn Key Health Clinics has established exemplary retention rates with dependable, professional medical staff."

14. The defendant Deirdra Vester, LPN at all times herein mentioned was employed by the defendant Turn Key Health Clinics, working either as registered nurse or license practical nurse.

IV.
Facts

15. The plaintiff Reginald Davis was arrested by members of the Little Rock Police Department on July 8, 2017.

16. The plaintiff was charged with commercial burglary, as defined by Ark. Code Ann. § 5-39-201, which is a Class C Felony, and obstructing governmental operations as defined by Ark. Code Ann. § 5-54-102, which is a Class C Misdemeanor.

17. The commercial burglary charge was later reduced to Criminal Trespass, which is codified at Ark. Code Ann. § 5-39-203, a Class C Misdemeanor.

18. On or about September 1, 2017, the plaintiff pled guilty to the above-mentioned misdemeanors, and was given a thirty (30) day sentence.

19. The plaintiff also had a parole hold on him as well, with the Arkansas Department of Correction.

20. The plaintiff is an insulin dependent diabetic, who was prescribed 30 units of NPH or isophane insulin, which is a slow acting insulin.

21. The plaintiff's medical records, which were in the custody of Turn Key Health Clinics, indicated that he was on a daily regime of 30 units of NPH or isophane insulin, to control his blood sugar level.

22. At approximately 3:00 a.m., on the date of September 22, 2017, Nurse Deirdra Vester came to the plaintiff's cell to administer his daily dose of insulin, but mistakenly gave him 30 units of regular or neutral insulin.[1]

23. Prior to administering the plaintiff's insulin shot, his blood sugar was approximately 164.

24. Regular or neutral insulin is a short or fast acting insulin.

25. After the plaintiff was given his insulin shot, he laid back down and went to sleep.

26. At approximately 5:13 a.m., defendant Debra Ann Davis told the plaintiff that he needed to come out of his cell (#G-306) in order to get his diet tray, and to come out into the unit.

27. When Mr. Davis got up, he was lightheaded, due to his blood sugar being extremely low, and he passed out.

28. Upon information and belief, the plaintiff's blood sugar level dropped from 164, prior to his insulin shot at approximately 3:00 a.m., to 28 when he passed out.

29. When Mr. Davis passed out, he fell in such a manner that he broke his ankle.

30. Defendant Dillard immediately recognized that something was wrong with Mr. Davis' ankle, noting that it was severely swollen, and bent in an awkward manner.

31. Deputies McEwen, Sgt. Nelson, Lt. Sims responded to the scene, and also saw that the plaintiff's ankle was severely swollen.

32. Medical staff of Turn Key Health Clinics also arrived on the scene, and saw that the plaintiff was in apparent distress.

33. Despite the fact that Mr. Davis had suffered an obvious injury to his ankle, he was placed back in his cell, and was not provided emergent care for his ankle.

---

[1] The records indicate that Nurse Vester administered the plaintiff's insulin shot at 4:54 a.m. on the date of September 22, 2017.

34. Although the plaintiff has suffered a severe injury to his ankle, he went several days without receiving medical treatment, despite his numerous requests to be seen by a doctor.

35. On September 29, 2017, the plaintiff filed a grievance, contending that he had not been allowed to see a doctor about his ankle injury.

36. Finally, on September 29, 2017, the plaintiff was taken to the University of Arkansas for Medical Sciences (UAMS), where it was confirmed that his ankle was broken, and he was placed in a temporary cast.

37. The doctors at UAMS advised that the plaintiff needed to have surgery in order to repair his ankle, and is believed to have provided a date for the plaintiff's surgery.

38. However, in an effort to avoid incurring this medical expense, the defendants "fast-tracked" the plaintiff to the Arkansas Department of Correction (ADC).

39. The plaintiff went to the Arkansas Department of Correction on or about November 9, 2017, in order to serve a six (6) month sentence for a parole violation.

40. After the plaintiff arrived at the Arkansas Department of Correction, he was later taken to UAMS for surgery, where his ankle was repaired with screws and plates.

41. The plaintiff was placed in a walking boot.

42. The plaintiff was released from ADC on August 1, 2018.

43. Due to the fact that the plaintiff is diabetic, and the fact that the walking boot was rubbing against his ankle, this resulted in an infection to the plaintiff's ankle.

44. Sometime in November 2018, the plaintiff was forced to have his right leg amputated due to the infection developing in his right ankle and leg.

## V.
## Count One
### Deprivation of Civil Rights

45. The plaintiff incorporates by reference the allegations contained in paragraphs 1-44 of the plaintiff's complaint, and adopts each as if set out herein word for word.

46. The plaintiff was a post-trial detainee of the Pulaski County Regional Detention Facility.

47. The defendants were well aware of the plaintiff's serious medical needs.

48. The defendants knew that the plaintiff had experienced a serious injury to his ankle when he fell on September 22, 2017.

49. Nurse Marsha Warren stated that the plaintiff's "right foot was turned completely to the right with skin intact but dislocated at ankle." The plaintiff was simply advised to "avoid heavy lifting, strenuous work/activity until problem resolved . . . ."

50. Despite knowing that the plaintiff had suffered a serious injury to his ankle, the defendants failed to provide medical attention to the plaintiff in a timely manner. Rather, the defendants waited for some seven (7) days to take the plaintiff to the hospital, for an x-ray, where it was determined that he had suffered an "open fracture of distal end of right fibula."

51. The defendants were deliberately indifferent towards the serious medical needs of Mr. Davis, which resulted in his continued suffering.

52. Pulaski County, Arkansas through its sheriff failed to see that its staff was properly trained to deal with the medical needs of its pre-trial detainees, and such failure to train amounted to deliberate indifference, in violation of the decedent's federally protected rights as secured by the due process clause of the Fifth and Fourteenth Amendments to the United States Constitution.

53.     Furthermore, Pulaski County through its sheriff failed to see that its staff was properly trained to deal with situations where the medical staff refused to provide medical treatment to its pre-trial detainees, and such failure to train amounted to deliberate indifference, in violation of the plaintiff's federally protected rights as secured by the due process clause of the Fifth and Fourteenth Amendments to the United States Constitution.

54.     The defendants' acts of deliberate indifference towards the plaintiff's serious medical needs, violated his rights to due process of law, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, and that said violations are enforceable pursuant to 42 U.S.C.S. § 1983.

55.     Furthermore, the defendants' acts of refusing to provide medical attention to the plaintiff's obvious serious medical needs amounted to cruel and unusual punishment in violation of his rights as guaranteed by the Eighth Amendment to the United States Constitution, which is applicable to the states by way of the Fourteenth Amendment.

56.     The defendants' acts of deliberate indifference towards the plaintiff's serious medical needs, evidence an intent to punish him in violation of the due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution, and that said violations are enforceable pursuant to 42 U.S.C.S. § 1983.

57.     The defendants' acts of deliberate indifference towards the plaintiff's serious medical needs, evidence an intent to punish him amounting to cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution, and that said violations are enforceable pursuant to 42 U.S.C.S. § 1983.

58.     The defendants were acting under color of law when they detained the plaintiff at the Pulaski County Regional Detention Facility.

59. The defendants, acting under color of law, intentionally, negligently, and with complete and deliberate indifference towards the serious medical needs of the plaintiff, caused the him to be deprived of his constitutional rights including but not limited to the due process clause of the Fifth and Fourteenth Amendments to the United States Constitution, by failing to supervise and properly train its staff, and by failing to promulgate an adequate training program designed to eliminate such inadequacies in the operation of its jail, which proximately caused the plaintiff's continued suffering.

60. At all times herein mentioned, Nurse Vester was acting in her scope of employment with Turn Key Health Clinics.

## VI.
## Count Two
## Medical Malpractice

61. The plaintiff incorporates by reference the allegations contained in paragraphs 1-60 of the plaintiff's complaint, and adopts each as if set out herein word for word.

62. The defendant Turn Key Health Clinics was the contract provider of medical services to the Pulaski County Regional Detention Facility by way of Pulaski County, Arkansas.

63. Upon information and belief, Turn Key Health Clinics began providing medical services to the inmates of the Pulaski County Regional Detention Facility on December 1, 2016.

64. Turn Key Health Clinics boasts of being "unmatched in our region with the ability to recruit and retain dependable staff for the correctional environment."

65. Upon information and belief, Nurse Vester was employed by Turn Key Medical Clinics as an LPN.

66. Despite the fact that Turn Key Health Clinics had a contractual obligation to provide medical treatment to pre-trial detainees and post-trial detainees housed at the Pulaski

Case 4:19-cv-00643-LPR Document 1 Filed 09/18/19 Page 10 of 13

County Regional Detention Facility, it failed to provide such care to Reginald Davis on the date of September 22, 2017, and thereafter.

67. Furthermore, the Turn Key Health Clinics was negligent in the care that was provided to the plaintiff, due to providing the plaintiff with the inappropriate insulin medication that he needed the time.

68. Due to the Turn Key Health Clinics' negligence, the plaintiff's blood sugar level dropped to a dangerous level, which caused him to pass out, resulting in him fracturing his ankle.

69. Furthermore, other employees and or agents of Turn Key Medical Clinics were aware of the medical crisis that Reginald Davis was facing, but failed to provide medical treatment to him.

70. This act of refusing to render medical care to Mr. Davis was not only negligent, but grossly negligent, and failed below the standard of care that it should have provided, which amounts to a breach of the standard of care that should have been taken by Turn Key Medical Clinics, and its employees and/or agents.

71. It was not until September 29, 2017, that the plaintiff was finally taken to the emergency room at UAMS, where he was diagnosed with having a "open fracture of distal end of right fibula."

72. As a direct and proximate cause of the defendants' negligence, as well as gross negligence, Mr. Davis experienced pain and suffering, and ultimately the forced amputation of his right leg.

73. Also, as a direct and proximate cause of the defendants' negligence, as well as gross negligence, Mr. Davis incurred medical expenses in an amount to be proven at trial.

74. In that the defendants acted with gross negligence and/or deliberate indifference, the plaintiff is entitled to an award of punitive damages.

## VII.
## Damages

75. The plaintiff incorporates by reference the allegations contained in paragraphs 1-74 of the plaintiff's complaint, and adopts each as if set out herein word for word.

76. The plaintiff experienced unnecessary pain and suffering due to the defendants' act of deliberate indifference towards his serious medical needs, in an amount to be proven at trial.

77. The plaintiff has continued to experience pain and suffering due to the forced amputation of his leg, and will likely experience pain and suffering in the future.

78. The plaintiff also incurred medical expenses due to the defendants' act of deliberate indifference towards his serious medical needs, and will likely experience medical expenses in the future, in an amount to be proven at trial.

79. As a direct and proximate cause of the defendants' acts of deliberate indifference towards his serious medical needs, and the defendant Turn Key Health Clinics LLC's act of medical negligence, the plaintiff lost his leg due to a forced amputation, which has resulted in the plaintiff suffering a loss of his enjoyment of life, in an amount to be proven at trial.

80. This act of deliberate indifference towards the plaintiff's serious medical needs amounts to cruel and unusual punishment and a denial of the plaintiff's due process rights, making an award of punitive damages appropriate.

## JURY DEMAND

81. The plaintiff requests that this matter be tried before a fair and impartial jury of twelve (12) persons.

THEREFORE, the plaintiff is seeking the following relief for the above described acts of deliberate indifference towards his serious medical needs, and for the acts of medical negligence:

a) judgment declaring that the defendants' acts of deliberate indifference, as set forth above, violated his rights as secured by the Fifth and Fourteenth Amendments to the United States Constitution;

b) judgment declaring that the defendants' acts of deliberate indifference, as set forth above, amounts to cruel and unusual punishment in violation of his rights as secured by the Eighth and Fourteenth Amendments to the United States Constitution;

c) judgment declaring that the separate defendant Turn Key Health Clinics LLC's act of denying the plaintiff medical treatment, and further act of delaying medical treatment amounts to medical negligence;

d) compensatory damages to the plaintiff due to the negligence and deliberate acts of the defendants;

e) damages for the loss of enjoyment of life;

f) punitive damages;

g) attorney's fees as provided by 42 U.S.C.S. § 1988;

h) the plaintiff's cost in prosecuting this claim; and

i) such further relief and additional relief that the Court deems appropriate herein.

Respectfully submitted,

PORTER LAW FIRM
The Catlett-Prien Tower Building
323 Center Street, Suite 1035
Little Rock, Arkansas 72201
Telephone: 501-244-8200
Facsimile: 501-372-5567
Email: Aporte5640@aol.com

By: _____
Austin Porter Jr., No. 86145

Dated this 18th day of September 2019.